**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Paula D. Libertore,** | ) | **CASE NO. 5:11 CV 1245** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Michael J. Astrue,** | ) | **Memorandum of Opinion and Order** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the Report and Recommendation ("R&R") of Magistrate Judge James R. Knepp, II, recommending that the decision of the Commissioner be affirmed. Plaintiff filed objections. For the reasons that follow, the R&R is ACCEPTED and the decision of the Commissioner is AFFIRMED.

**FACTS**

Plaintiff acknowledges that the Magistrate Judge "conducted a thorough and accurate review of the facts" of this case. Accordingly, the Court will not restate all of the facts. Rather,

1

the Court incorporates the factual statements, including the summary of medical evidence, contained in the R&R.  Only a brief summary is set forth herein.

Plaintiff has a history of repeated visits to the emergency room, often complaining of abdominal pain.  A number of scans and tests revealed a mass on his pancreas.  Some physicians believed the mass appeared malignant, but fine needle biopsies were negative for malignant cells.  Plaintiff continued to present to the emergency room and further testing continued to show a mass growing in size.  One physician interpreting the scan indicated that the mass "suggests primary carcinoma."

In addition to the pancreatic mass, plaintiff suffers from mental impairments.  Plaintiff continuously attempted to obtain the drug Mycostatin from emergency room doctors because he believed it was the only drug that would cure his pain.  Mycostatin, however, is a cream used to treat rashes.  In addition, plaintiff walked into the lobby of the county jail demanding that the medical staff refill his prescriptions.  He also went to the Rite-Aid pharmacy and demanded a "lifetime refill" of Mycostatin.   Plaintiff acted threateningly and was agitated during these two episodes.  Some hospital personnel had similar experiences when treating plaintiff.

Plaintiff testified at the hearing.  His testimony is often rambling and tangential.  He indicated that he could lift "75 pound steel pallets" as long as he has Mycostatin, but no one will prescribe him the medication.  He testified that because of arthritis, the heaviest he could lift is 35 pounds. Plaintiff does not believe he can work an eight hour shift.

The ALJ concluded that plaintiff suffered from the severe impairments of personality disorder and osetoarthrosis.  Although not determining the mass on plaintiff's pancreas to constitute a "severe impairment," the ALJ considered the limitations caused by the mass on

plaintiff's pancreas. Specifically, the ALJ determined that plaintiff suffered from abdominal pain, but that the pain was not severely disabling. Based on his physical limitations, plaintiff could perform medium work.

The ALJ concluded that plaintiff was markedly limited in social functioning. As such, plaintiff "should perform low stress work, no high production or piece rate work; no work involving arbitration, confrontation, or negotiation; and he should have only superficial interpersonal interaction with the public and co-workers."

The ALJ accepted testimony from a vocational expert who determined that plaintiff possessed the residual functional capacity to work as a cook helper, dining room attendant, and dishwasher/kitchen helper. Because a significant number of these jobs exist in the national economy, the ALJ concluded that plaintiff is not disabled.

Thereafter, in May of 2011, the Appeals Council denied review. Plaintiff appealed to this Court. Six months after filing the appeal, plaintiff died. The death certificate shows that plaintiff died from pancreatic cancer. The death certificate, which was not part of the record below, indicates an onset date of three months prior to death.

The Magistrate Judge recommends affirming defendant's decision to deny benefits. Plaintiff objects to the R&R on two grounds. Each will be addressed in turn.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 72, which governs the matter herein inasmuch as timely objections have been made to the Report and Recommendation, provides in part:

> **(b) Dispositive Motions and Prisoner Petitions.**
> ...The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which

3

> specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

As stated in the Advisory Committee Notes, "The term 'de novo' signifies the magistrate's findings are not protected by the clearly erroneous doctrine, but does not indicate that a second evidentiary hearing is required." citing *United States v. Raddatz*, 447 U.S. 667 (1980).

### **ANALYSIS**

1. Mental limitation

Plaintiff objects to the Magistrate Judge's conclusion that substantial evidence supports the ALJ's determination that plaintiff was capable of superficial interaction with the public and co-workers.  Plaintiff points out that Magistrate Judge first noted a number of instances in which plaintiff acted in a hostile manner, was unable to control his anger, and displayed homicidal intent.  Further, the Magistrate Judge discredited the citations to the record relied upon by the government in briefing this issue.  Rather, the Magistrate Judge reviewed the record and found instances in which plaintiff displayed appropriate social behavior.  According to plaintiff, these isolated incidents do not support a finding that plaintiff would be capable of functioning appropriately on a sustained basis.  In response, the government points out that the Court may look to the record as a whole and, therefore, it was not error for the Magistrate Judge to consider evidence not specifically cited by the government.  The government further argues that the record shows that plaintiff was able to attend doctor's appointments without incident, interact with employees from the Social Security Administration ("SSA"), and participate in social activities.  According to the government, the record contains treatment notes spanning two years, which demonstrate that plaintiff could at least interact on a superficial level.  Some of the notes

indicate that plaintiff acted "cooperatively."

Upon review, the Court finds that plaintiff's objection is not well-taken. The ALJ found plaintiff to be "markedly" limited in social functioning, which is a serious limitation. The ALJ ultimately concluded, however, that plaintiff was not entirely incapable of any interaction and, therefore, limited plaintiff to superficial interaction with the public and co-workers. The Court finds that this determination is supported by substantial evidence. As noted by the Magistrate Judge, plaintiff was capable of sustained interaction with the public during these two interviews with SSA employees. Both interviewees reported that plaintiff showed no obvious impairment, was alert and cooperative. Plaintiff demonstrated no difficulty in talking, answering, or concentrating. At several emergency room visits, personnel reported that plaintiff was cooperative and/or behaving "normally." Although plaintiff testified in a tangential manner at the hearing, he interacted appropriately with the ALJ and, as the Magistrate Judge noted, he even apologized for showing up late. In addition, both consultive experts determined that plaintiff was only mildly limited in social functioning. Thus, substantial evidence exists to support the ALJ's determination that plaintiff was markedly limited in social functioning and capable of superficial interaction with the public and co-workers.

2.  Physical limitation

Plaintiff next objects to the ALJ's failure to include physical limitations caused by plaintiff's pancreatic mass. According to plaintiff, the Magistrate Judge incorrectly concluded that the ALJ properly relied on the needle biopsies, which showed that the mass was not malignant. Plaintiff claims that even if the mass was indeed benign, plaintiff's complaints of pain should not have been discredited on that basis. Plaintiff claims that there was objective

evidence in the record demonstrating that plaintiff had a mass on his pancreas that was growing. As such, his complaints of abdominal pain were reasonable. In response, the government points out that the existence of the mass says nothing of the severity of the impairment or whether the impairment necessitates any work related restrictions. According to the government, the Magistrate Judge correctly determined that the ALJ did not err in concluding that plaintiff's abdominal pain was not disabling.

Upon review, the Court rejects plaintiff's argument. As noted by the Magistrate Judge, the record reveals evidence from which the ALJ could have concluded that plaintiff's abdominal pain was not of disabling severity. A number of medical records reveal that plaintiff's pain was inconsistent, treatable, and possibly somatic. A medical record from 2008 indicates that plaintiff performed heavy work around the house, including lifting or moving heavy furniture. In addition, plaintiff's repeated insistence that his pain was alleviated by the use of the rash cream supports the conclusion that plaintiff's pain was in part somatic in nature. In all, the Court finds that substantial evidence supports the ALJ's conclusions regarding plaintiff's abdominal pain.

### **CONCLUSION**

For the foregoing reasons, the Report and Recommendation of Magistrate Judge James R. Knepp, II, is ACCEPTED and is incorporated herein by reference. The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 9/4/12   United States District Judge